# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | |
|---|---|
| Aljanal Carroll, Claudia Provost Charles, Tiffany Fair, and Tareion Fluker,<br><br>       Plaintiffs,<br><br> v.<br><br>Walden University, LLC and Walden e-Learning, LLC,<br>       Defendants. | Case No. 1:21-cv-00051-JRR |

## **DECLARATION OF ALEXA T. MILTON**

I, Alexa Milton, hereby declare and state the following:

  1.  I am over the age of eighteen and am competent to make this Declaration. I have personal knowledge of the matters set forth herein.

  2.  I am counsel for Plaintiffs in the above-captioned case.

  3.  I submit this Declaration in support of Plaintiffs' Unopposed Motion for Final Approval of Proposed Class Action Settlement and Certification of Class ("Final Approval Motion").

  4.  I am an attorney at the law firm Relman Colfax, PLLC ("RC"). RC specializes in representing plaintiffs in civil rights litigation across the country. RC routinely litigates a wide range of discrimination cases in federal court including many cases, like this one, that involve lending and other consumer issues under both state and federal law.

  5.  RC has significant experience serving as plaintiffs' counsel in class action litigation involving discrimination and civil rights claims, including *Puryear* v. *Dotson*,

1

No. 3:24-cv-00479 (E.D. Va filed June 28, 2024); *Flack v. Wisconsin Department of Health Services*, No. 3:18-cv-309 (W.D. Wis. 2019); *Fair Housing Center of Central. Indiana, Inc. v. Rainbow Realty Group, Inc.*, No. 1:17-cv-1782 (S.D. Ind. filed May 30, 2017); *Morgan v. Richmond School of Health and Technology, Inc.*, No. 1:11-cv-01066 (D.D.C. filed June 8, 2011)[1]; *In re Black Farmers Discrimination Litigation*, No. 1:08-mc-00511-PLF (D.D.C. filed Aug. 7, 2008); and *Moore v. Napolitano*, No. 00-953 (D.D.C. filed May 3, 2000).

6. RC also has experience and knowledge in prosecuting "reverse redlining" cases such as this one, which allege the discriminatory targeting of a predatory practice or product. In addition to *Rainbow Realty Group* and *Richmond School of Health and Technology*, noted above, these include *United States ex. rel. Boyd v. Corinthian Colleges, Inc.*, No. 1:14-cv-06620 (N.D. Ill. filed Aug. 27, 2014); *Mayor & City Council of Baltimore v. Wells Fargo Bank, N.A.*, No. 08-62, 2011 WL 1557759 (D. Md. Apr. 22, 2011); *City of Memphis v. Wells Fargo Bank, N.A.*, No. 09-2857, 2011 WL 1706756 (W.D. Tenn. May 4, 2011); and *Saint-Jean v. Emigrant Mortgage Co.*, No. 11CV2122, 337 F. Supp. 3d 186 (E.D.N.Y. 2018).

7. RC began working with the National Student Legal Defense Network ("Student Defense") to investigate the above-captioned matter in 2021, and since that time has acted as lead counsel for all aspects of the litigation.

8. I have had primary responsibility for the day-to-day litigation and management of the matter during the entire course of the firm's involvement, other than the months during which I was on parental leave and the litigation was managed by my colleagues Glenn Schlactus, Tara Ramchandani, and Lila Miller. I have been involved in all aspects of this litigation, including the factual development of the case, developing the legal theory of the case, interviewing former

---

[1] The case was ordered transferred on April 30, 2012, to the Eastern District of Virginia, where it was docketed as civil action number 3:12-cv-373-JAG.

2

Walden University, LLC and Walden E-Learning, LLC (collectively, "Walden") students, drafting the complaint and amended complaint, motions briefing, discovery, interacting with opposing counsel, mediation, and settlement. Throughout the case, I attempted to assign the most junior person appropriate for a given task, including paralegals and summer associates where possible.

9.      I graduated from Macalester College *magna cum laude* in 2005 and received my law degree from Yale Law School in 2016. I have been with RC since 2016, where I litigate a wide range of civil rights cases, including others involving education, lending, and race and sex discrimination. I am admitted to practice in Maryland and the District of Columbia. In addition to myself, the following RC attorneys assumed substantial roles in litigating this matter: Glenn Schlactus, Lila Miller, Tara Ramchandani, and Ted Olds.

10.     Glenn Schlactus, a Partner at RC, graduated from Georgetown University in 1990 and received his law degree *cum laude* from Georgetown University Law Center in 1998. Following law school, he clerked for the Honorable Patricia M. Wald of the U.S. Court of Appeals for the D.C. Circuit. Prior to joining RC in 2006, he litigated complex fair lending and insurance coverage cases in federal court at Skadden, Arps, Slate, Meagher & Flom LLP and Gilbert, Heintz & Randolph, LLP (now known as Gilbert LLP). Mr. Schlactus litigates fair lending and other discrimination cases at RC, including cases that raise education and consumer law issues and class actions. He is admitted to practice in the District of Columbia and California. He has been actively involved throughout the course of this litigation, including investigation, preparing the complaint and amended complaint, motions briefing, interacting with opposing counsel, and negotiating the settlement.

11.     Lila Miller, a Partner at RC, graduated from the University of California Los Angeles *magna cum laude* in 2011 and received her law degree from Stanford Law School in

3

2014. Ms. Miller served as a law clerk to the Honorable Jane B. Stranch of the U.S. Court of Appeals for the Sixth Circuit and to the Honorable Kevin H. Sharp of the U.S. District Court for the Middle District of Tennessee. Ms. Miller has litigated individual and class action discrimination cases both at RC and at other plaintiff-side firms prior to joining the firm in 2018. At RC, Ms. Miller has litigated a variety of civil rights cases involving discrimination, including in lending. Ms. Miller is admitted to practice in the District of Columbia, California, and New York. Ms. Miller worked on several components of the litigation, including preparing the complaint and amended complaint, motions briefing, discovery, and settlement.

12. Tara Ramchandani, a Partner at RC, graduated from Brown University with honors in 2004 and received her law degree from Harvard Law School in 2008. Ms. Ramchandani served as a law clerk to the Honorable Algenon L. Marbley of the U.S. District Court for the Southern District of Ohio. Prior to joining RC in 2010, she worked as an associate at Goodwin Procter LLC. Ms. Ramchandani has litigated a variety of civil rights cases while at RC, including fair lending and education matters. Ms. Ramchandani is admitted to practice in the District of Columbia and the Commonwealth of Massachusetts. Ms. Ramchandani worked on many facets of the litigation, including investigation, preparing the complaint and amended complaint, motions briefing, discovery, and settlement.

13. Ted Olds, an Attorney at RC, graduated from Oberlin College in 2005 and received his law degree from Columbia Law School in 2018. Mr. Olds served as a law clerk to the Honorable Carlos F. Lucero of the U.S. Court of Appeals for the Tenth Circuit and to the Honorable Nicholas G. Garaufis of the U.S. District Court for the Eastern District of New York. Before joining RC in 2021, Mr. Olds practiced housing defense and affirmative anti-discrimination litigation at a legal services organization. His practice includes litigation challenging a variety of discriminatory practices, including those of financial institutions. Mr.

Olds is admitted to practice in the District of Columbia and New York. Mr. Olds played an active role in many components of the litigation, including investigation, preparing the complaint and amended complaint, motions briefing, discovery, and settlement.

14. Nicholas Abbott and Emahunn Campbell, two of the firm's civil rights fellows, who are hired for two-year terms, have also assisted with this matter. Mr. Abbott graduated from Harvard University in 2018 and received his law degree from Harvard Law School in 2022. Mr. Abbott is admitted to practice in Maryland and the District of Columbia. He completed his fellowship at RC two weeks ago. Mr. Campbell graduated from the University of Virginia in 2008 and received his law degree from Rutgers Law School, Newark, in 2021. Mr. Campbell also earned his PhD in Afro-American Studies from the University of Massachusetts, Amherst, in 2015. He is admitted to practice in New Mexico.

15. Because our paralegals are hired for two-year terms, the primary paralegals assigned to this matter have changed over time. The attorneys assigned to this case have been assisted primarily by five paralegals at RC: Alicia Menendez-Brennan, Don Scales, Joëlle Simeu, Kelis Johnson, and Sarah Ogundare. They have also been assisted by two summer associates, Alyssa Wilson and Angela Kang, and by litigation support specialist Jonathan Iyob.

16. From the beginning of this matter, consistent with RC's practice, all attorneys, fellows, summer associates, paralegals, and litigation support staff maintained a contemporaneous record and description of the tasks and activities that they performed for the matter. Those records and descriptions were entered into the electronic database that the firm maintains for this purpose.

17. To the best of my knowledge, there are only a handful of prior cases in the country alleging that a college has engaged in reverse redlining, and fewer such class actions.

5

18. RC and Student Defense (collectively, "Plaintiffs' Counsel") engaged in extensive independent factual investigation outside of discovery both prior to and after filing the initial complaint in this matter in January 2022. As part of this investigation, Plaintiffs' Counsel interviewed more than fifty current or former Walden DBA students, as well as numerous other Walden students and potential witnesses, reviewed thousands of pages of documents, and submitted multiple open records requests for documents from federal and state agencies.

19. Although the Parties entered serious settlement discussions soon after discovery began, Plaintiffs' Counsel also conducted formal written discovery, including preparing and negotiating a detailed e-Discovery plan and protocol, and propounding written interrogatory requests and requests for production of documents.

20. The Parties also exchanged substantial information during the mediation and settlement processes, including detailed datasets containing information on all then-known putative class members, including their gender, race, enrollment start and end dates, tuition and fees paid to Walden, the total number of capstone credits taken, and whether they had taken out loans; and information about the minimum credit requirement and minimum per semester credit cost for Defendants' DBA program. Information shared between the Parties during mediation and additional settlement negotiations indicated that the putative class included approximately 2,291 people.

21. After the Court preliminarily approved the proposed settlement, RC retained Settlement Services, Inc. ("SSI") to administer notice to class members and other aspects of the settlement. I worked closely with SSI to assure that notice was distributed in accordance with the Court's orders granting preliminary approval and subsequently, on Plaintiffs' motion, modifying the preliminary approval order. A declaration from Aisha Lange of SSI was submitted to the Court on October 4, 2024, describing SSI's administration of notice. *See* Dkt. No. 99.

22.     Based on Ms. Lange's declaration, my extensive communications with SSI and defense counsel, my review of the Notice documents, and my review of the claims administration website established by SSI, I believe notice was directed to class members in accordance with the notice process set forth in the Court's orders. Notice was provided by the Claims Administrator to a total of 2,259 people in accordance with the Court's Order Granting Preliminary Approval of Proposed Class Action Settlement, Provisional Certification of Class and Approval of Notice ("Preliminary Approval Order"). This consisted of (a) all of the 2,291 class members identified based on Walden's records other than the 37 *Thornhill* settlement participants who did not waive the confidentiality provisions of that settlement, and (b) five of six additional individuals who had not been identified based on Walden's records but contacted the Claims Administrator or were otherwise identified by the Parties and, upon investigation, were added to the Class Intake List. The Class Administrator disseminated this notice on May 8, 2024 to all of the 2,291 class members other than the *Thornhill* participants, and to the nine *Thornhill* class members who had waived confidentiality by that date. Over the next several weeks, the Class Administrator disseminated notice to nine additional *Thornhill* class members who subsequently waived confidentiality, and to five of the six additional individuals described above.[2]

23.     The notice, inter alia, informed class members of their June 19, 2024 deadline for opting out of the class and their July 3, 2024 deadline for filing objections to the settlement and rescinding prior opt outs.

---

[2] The sixth additional individual was sent a notice after the Court's Order Modifying Preliminary Approval pursuant to the notice process set forth in the Court's Order Modifying Preliminary Approval on August 16, 2024. *See* ¶ 26, *infra*.

7

24. As explained in Plaintiffs' July 10, 2024 Unopposed Motion to Modify Preliminary Approval Order with Respect to the Provision of Notice and to Make Other Conforming Modifications ("Motion to Modify Preliminary Approval"), Dkt. No. 96, the parties learned during the course of administering the class notice process in accordance with the Court's Preliminary Approval Order and investigating the class status of the six additional individuals described above that there was a small group of additional members or potential members of the class who had not received notice. This group consisted of (a) twelve individuals who, based on Walden's records, had recently surpassed the excess capstone credit threshold and now were covered by the class definition, and (b) approximately 179 individuals who might be class members, but whose class status could not be determined from Walden's records because they did not provide race and/or gender information to Walden at enrollment. Plaintiffs filed their Motion to Modify Preliminary Approval to seek the Court's approval for the Parties' plan for providing notice to these additional potential class members, which was granted July 16, 2024, Dkt. No. 98 ("Order Modifying Preliminary Approval").

25. Shortly after the Court's Order Modifying Preliminary Approval, Walden identified an additional 35 individuals who were identically situated to the group of 179, for a total of 214 individuals who might be class members but whose class membership could not be determined because they did not provide race and/or gender information to Walden at enrollment. Additionally, Walden received an additional waiver of confidentiality from one more *Thornhill* settlement participant.

26. The Class Administrator disseminated notice to the 12 additional class members and the 214 potential class members pursuant to the notice process set forth in the Court's Order Modifying Preliminary Approval on August 6, 2024. The Class Administrator also disseminated notice on August 16, 2024 to two more individuals: the *Thornhill* settlement participant who had

8

just provided a waiver of confidentiality, and one individual who had contacted Plaintiffs' Counsel about the settlement and, upon investigation by the Parties, was added to the Class Intake List. This supplemental notice, inter alia, informed recipients of their September 17, 2024 deadline for opting out of the class and their October 1, 2024 deadline for filing objections to the settlement and rescinding prior opt outs.

27.     Altogether, information provided to me by defense counsel and SSI indicates that notice was disseminated to 2,488 individuals. Information shared between counsel for the Parties indicates that 117 individuals who were included on Walden's initial Class Intake List do not satisfy the class requirements: 94 because they enrolled in but did not successfully complete the requisite number of capstone credits, 21 because they are Walden employees or former Walden employees, and two who do not qualify for both reasons. There were also two individuals who were sent notice either at their request or in error, but who Walden's records indicate do not meet the credit requirements for class membership.

28.     As a result, the Parties estimate that the maximum possible class size is 2,369 people, consisting of 2,155 individuals Walden indicates it has confirmed to be class members based on its records, and approximately 214 additional individuals who *might* be class members, but for whom Walden does not have sufficient race and/or gender information to confirm. The proposed final approval order being submitted to the Court provides that, in addition to the notice already sent, claims forms will be directed to the group of 214 individuals so that they may demonstrate their membership in the class as appropriate.

29.     Two people opted out of the class during the original notice period, one of whom rescinded that opt out prior to the recission deadline. One person filed an objection during the original notice period. No one opted out of the class during the second notice period, and no additional objections were filed. The single non-rescinded opt-out is identified in Exhibit A to

9

this declaration. The information on Exhibit A was provided to me by the Claims Administrator pursuant to the Court's Preliminary Approval Order and Order Modifying Preliminary Approval Order.

30. Both notices also informed class members that they could decline to allow Walden to disclose information covered by the Family Educational Rights and Privacy Act ("FERPA") to Plaintiffs' counsel and the class administrator, which would also act as an opt-out. I have been advised by counsel for Walden that no class member or potential class member has declined to allow this disclosure.

31. Information shared between the Parties during mediation indicates that $28,500,000 is approximately 31% of the costs that class members who enrolled between 2008 and 2018 were charged for what Plaintiffs allege were excess capstone credits. That estimate does not account for the reduction in the number of identified class members; as a result the settlement amount likely represents a slightly higher percentage of the excess costs paid by class members.

32. During litigation and settlement negotiations, Defendants indicated their belief that the statute of limitations for the class claims asserted extended no further back than 2013. Information shared between the Parties during mediation indicates that $28,500,000 is approximately 79% of the costs that class members who enrolled between 2013 and 2018 were charged for what Plaintiffs allege were excess capstone credits. Similarly, that estimate does not account for the reduction in the number of identified class members; as a result the settlement amount likely represents a slightly higher percentage of the excess costs paid by these class members.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

_____
Alexa Milton

Executed within the United States on: October 8, 2024

# EXHIBIT A

## WALDEN OPT OUT LIST

| Name | SSN | Address | Telephone Number |
|---|---|---|---|
| Antonio McClain | ███-██-7411 | 364 Shadetree Lane Lawrenceville, GA 30044 | 7704034534 |